<u>NOT FOR PUBLICATION</u>                                    [Dkt. No. 16]

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

| | |
|---|---|
| CAROL WITTMANN,<br><br>            Plaintiff,<br><br>     v.<br><br>ISLAND HOSPITALITY MANAGEMENT,<br>et al.,<br><br>            Defendants. | Civil No. 09-3698 RMB/KMW<br><br>**OPINION** |

Appearances:

> Kevin M. Costello
> Costello & Mains, P.C.
> 2090 Route 70 East
> Cherry Hill, NJ 08003
>      Attorneys for Plaintiff

> William J. Leahy
> Elizabeth D. Tempio Clement
> Littler Mendelson, P.C.
> Three Parkway
> 1601 Cherry Street, Suite 1400
> Philadelphia, PA 19102-1321
>           Attorney for Defendants Island Hospitality
> Management and Marriot International, Inc.

**BUMB**, United States District Judge:

I.   **Introduction**

Defendants City Island Hospitality Management and Marriot

International, Inc. ("Defendants") move for summary judgment

dismissing discrimination claims filed by Plaintiff Carol

1

Wittmann.[1]  Defendants argue that summary judgment is appropriate because Mrs. Wittmann suffered no discrimination and, even if she could show injury, she lacks standing to pursue a claim for injunctive relief under Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 et seq.  For the following reasons, Defendants' motion is granted in part and denied in part.

## II.  Background

On or about August 23, 2008, Plaintiff's husband, Ronald Wittmann, used the internet service "hotels.com" to reserve a room at the Atlantic City Courtyard by Marriot (hereafter "the Hotel").  Plaintiff's Counter Statement of Facts ("Pl. CSOF") ¶ 5.  Because the couple would be traveling with Mrs. Wittmann's service dog, Gracie, Mr. Wittmann called the internet service and requested that the Hotel be informed that the Wittmanns would be traveling with a service animal. Defendant's Statement of Undisputed Facts ("Def. SOF") ¶ 25; Pl. COSF ¶¶ 6-7.  The representative at hotels.com indicated that she would advise the Hotel.  Def. SOF ¶ 26; Pl. CSOF ¶ 7.

The Wittmanns and Gracie attempted to check into the Hotel on September 4, 2008.  Def. SOF ¶¶ 27-29; Pl. CSOF ¶¶ 8-9.  Upon

---

[1]    The pleadings reflect two different spellings of the Plaintiff's last name.  The Court adopts the spelling used in the docket caption.

seeing Gracie, who was carried by Mrs. Wittmann and displayed no indication of her function as a service dog, the front desk clerk informed the Wittmanns that the Hotel did not accommodate pets. Def. SOF ¶¶ 28-31; Pl. SOF ¶ 9.  The Wittmanns explained that Gracie was a service animal.  Def. SOF ¶ 32; Pl. CSOF ¶ 11.   The desk clerk sought counsel from Assistant Manager Ryan Schrade, who also informed the Wittmanns that pets were not permitted on the premises.  Def. at ¶ 33; Pl. CSOF ¶ 10.   Mrs. Wittmann responded by producing a card identifying Gracie as a service animal.  Def. SOF ¶¶ 35-36; Pl. CSOF ¶ 12.  Mr. Schrade called the toll-free number listed on the identification card but received no answer.  Def. SOF ¶¶ 36-37; Pl. CSOF ¶ 12.

The parties agree that Mr. Schrade eventually permitted Gracie to stay with the Wittmanns but differ in how they characterize the terms then imposed on the travelers.  Defendants maintain that Mr. Schrade asked for a credit card against which a security deposit would be charged, a request made of all guests. Def. SOF ¶ 39.  When the Wittmanns refused, Mr. Schrade asked for a $250 cash deposit.  Def. SOF ¶ 41.  The Wittmanns again refused and ultimately left the Hotel.  Def. SOF ¶¶ 42-45.  The Wittmanns contend that they were required to provide the $250 deposit because of their service animal.  Pl. CSOF ¶ 14.

3

According to Plaintiff, when Mr. Wittmann objected to the deposit, Mr. Schrade characterized the sum as a "gratuity" and explained that the Hotel required the deposit because the guest room had new rugs. Pl. SOF ¶ 14. During this exchange, another hotel employee offered the Wittmanns a handicap-accessible room, which further served to offend Mrs. Wittmann. Pl. SOF ¶ 15. She brought suit in the Superior Court of New Jersey, Atlantic County alleging violations of the New Jersey Law Against Discrimination ("LAD") and the ADA. Defendants removed the action to this Court.

### III. Standard of Review

Summary judgment should be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law." Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006)(citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

"If the non-moving party bears the burden of persuasion at trial, 'the moving party may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to

4

carry that burden.'" Id. (quoting Wetzel v. Tucker, 139 F.3d 380, 383 n.2 (3d Cir. 1998)).  Upon such a showing, the burden shifts to the non-moving party to produce evidence of a genuine, factual dispute.  Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The non-movant's burden is rigorous:  it "must point to concrete evidence in the record;" mere allegations, conclusions, conjecture and speculation will not defeat summary judgment. Orsatti v. N.J. State Police, 71 F.3d 480, 484 (3d Cir. 1995).

When considering a summary judgment motion, the Court does not weigh evidence; rather, all reasonable "inferences, doubts, and issues of credibility should be resolved against the moving party." Meyer v. Riegel Products Corp., 720 F.2d 303, 307 n.2 (3d Cir. 1983).  However, "a mere scintilla of evidence," without more, will not give rise to a genuine issue for trial.  Anderson, 477 U.S. at 252.  Summary judgment is still appropriate "where the record ... could not lead a rational trier of fact to find for the nonmoving party ...." Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  "Summary judgment motions thus require judges to 'assess how one-sided evidence is, or what a 'fair-minded' jury could 'reasonably' decide….'" Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460 (3d Cir. 1989) (quoting Anderson, 477 U.S. at 265 (Brennan, J. dissenting)).

## IV.  Analysis

Defendants contend that summary judgment is appropriate because (1) Mrs. Wittmann cannot make out a prima facie case of discrimination in a place of public accommodation and (2) she lacks standing to pursue an action for injunctive relief, the only remedy available under Title III of the ADA.  <u>See</u> 42 U.S.C. § 12188(a)(1); <u>Clark v. Burger King Corp.</u>, 255 F.Supp.2d 334, 342 n.8 (D.N.J. 2003) ("Under Title III, only injunctive relief is available.").  Mrs. Wittmann opposes summary judgment by contending that a factual dispute exists over whether the $250 security deposit requested of the Wittmanns is required of all guests.  She offers no response to Defendants' standing argument. The Court begins its analysis by addressing Plaintiff's ADA claim, as this claim provided the basis for removing this action to federal court.  <u>See</u> Notice of Removal at ¶¶ 3-4.

### A.  Plaintiff's ADA Claim

Title III of the ADA provides a private right of action for injunctive relief to disabled persons subject to discrimination in places of public accommodation.  42 U.S.C. § 12188(a)(1).  To make out a prima facie case for public accommodation discrimination, a plaintiff must demonstrate:

> (1) [s]he was discriminated against on the basis of disability; (2) in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or

accommodations of any place of public accommodation; (3) by any person who owns, leases (or leases to), or operates a place of public accommodation.

Bowers v. National Collegiate Athletic Ass'n, 118 F.Supp.2d 494, 514 (D.N.J. 2000).

Defendants concede, for purposes of the pending motion, that Mrs. Wittmann is a disabled individual within the meaning of the ADA, and that the Hotel is a place of public accommodation.  Def. Br. at 13-14.  They argue that, nonetheless, Plaintiff lacks standing to pursue a discrimination claim because she cannot show a real and immediate threat of future injury.

**1.  Standing**

"Standing is a threshold jurisdictional requirement, derived from the 'case and controversy' language of Article III of the Constitution."  Pub. Interest Research Group, Inc. v. Magnesium Elektron, Inc., 123 F.3d 111, 117 (3d Cir. 1997); see Steel Co. v. Citizens for Better Env't, 523 U.S. 83, 102 (1998). To show Article III standing, a plaintiff has the burden of proving three elements:

> (1) [she] has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

<u>Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.</u>, 528
U.S. 167, 180-81 (2000); <u>Soc'y Hill Towers Owners' Ass'n v.
Rendell</u>, 210 F.3d 168, 175-76 (3d Cir. 2000).

In addition to constitutional considerations, courts
recognize a "prudential component of standing," that is,

> judicially self-imposed limits on the exercise of federal
> jurisdiction, such as the general prohibition on a
> litigant's raising another person's legal rights, the rule
> barring adjudication of generalized grievances more
> appropriately addressed in the representative branches, and
> the requirement that a plaintiff's complaint fall within the
> zone of interests protected by the law invoked.

<u>Allen v. Wright</u>, 468 U.S. 737, 751 (1984).  To be sure, "[t]he
rules of standing, whether as aspects of the Art. III case or
controversy requirement or as reflections of prudential
considerations defining and limiting the role of courts, are
threshold determinations of the propriety of judicial
intervention."  <u>Warth v. Seldin</u>, 422 U.S. 490, 517-18 (1975).
Thus, at the summary judgment stage, when a defendant argues that
a plaintiff lacks Article III standing, the plaintiff cannot
respond with mere allegations but must point to specific, record
facts demonstrating each standing element.  <u>See</u> <u>Lujan v.
Defenders of Wildlife</u>, 504 U.S. 555, 561 (1992).

### 2.   Injury in Fact

Defendants argue that Mrs. Wittmann cannot show "an injury
in fact," that is, a "concrete and particularized" harm that is

"actual or imminent," as is necessary to maintain standing.  See
Lujan, 504 U.S. at 560.  More specifically, Defendants recognize
that Mrs. Wittmann's sole remedy for an ADA violation is
prospective injunctive relief and argue that she cannot
demonstrate a real and immediate threat of future injury.
Courts recognize that "[p]ast exposure to illegal conduct does
not in itself show a present case or controversy regarding
injunctive relief...."  Brown v. Fauver, 819 F.2d 395, 400 (3d
Cir. 1987) (quoting O'Shea v. Littleton, 414 U.S. 488, 495
(1974)); see also Doe v. Nat'l Bd. of Medical Exam'rs ("Doe II"),
210 Fed. Appx. 157, 159-60 (3d Cir. 2006)(quoting City of Los
Angeles v. Lyons, 461 U.S. 95, 102 (1983))("Past illegal conduct
is insufficient to warrant injunctive relief unless it is
accompanied by 'continuing, present adverse effects.'").  Rather,
"[i]n order to obtain standing for prospective relief, the
plaintiff must 'establish a real and immediate threat'" that he
or she would again be the victim of an unlawful practice. Brown,
819 F.2d at 400 (quoting Lyons, 461 U.S. at 105).
"Likewise, intentions to return to the source of the illegal
conduct 'some day'--without any description of concrete plans, or
indeed even any specification of when the some day will be--do
not support a finding of the requisite actual or imminent
injury." Dempsey v. Pistol Pete's Beef N Beer, LLC, No. 08-5454,

9

2009 WL 3584597, at *4 (D.N.J. Oct. 26, 2009)(internal quotations omitted) (citing Lujan, 504 U.S. at 564, where affiant lacked standing to seek injunction protecting endangered animals, because she merely professed intent to "some day" return to observe them, but had no "concrete plans" to do so).  Where a plaintiff alleges an ongoing harm, however, her conditional statement--that, but for defendant's conduct, plaintiff would avail herself of certain benefits--satisfies the "injury in fact" requirement.  Laidlaw, 528 U.S. at 184 (distinguishing affiants' conditional statements--that they would use nearby river for recreation if defendant were not discharging pollutants into it-- from speculative "some day" intentions that were fatal to standing in Lujan).

The Third Circuit has acknowledged that these "injury in fact" principles apply in the context of Title III of the ADA. See Doe v. Nat'l Bd. of Medical Exam'rs ("Doe I"), 199 F.3d 146, 153 (3d Cir. 1999).  In deciding that a medical student had standing to pursue a preliminary injunction restraining the practice of flagging scores where examinees received test accommodations, the Circuit considered that the injury alleged was personal to the student, concrete, in so far as the alleged injury was "not too theoretical," and was "actual or imminent," i.e., not too "speculative."  Id.  The Court noted that Doe did

not claim "an injury from generalized discrimination against disabled persons or suing on the behalf of the disabled," that his fear of discrimination was well-founded, not theoretical, and that the injury was imminent in as much as the scores were sure to be flagged in the future.  Id.

By contrast, on subsequent appeal to the Circuit, the Court held that Doe lacked standing to pursue injunctive relief because he could no longer show an injury in fact.  Doe II, 210 Fed. Appx. at 160-61.  By this point in the litigation, Doe was no longer applying for a residency program; rather, he sought a California medical license.  Id.  Thus, he could not claim a realistic fear of discrimination where the licensing board would only view Doe's score on a pass-fail basis.  Id.  The Circuit specifically rejected Doe's argument that he might pursue a fellowship or relocate to another state as meeting the injury-in-fact requirement.  Id.  Quoting Lujan, the Court explained, "[w]e have insisted that the injury proceed with a high degree of immediacy, so as to reduce the possibility of deciding a case in which no injury would have occurred at all."  Id. (quoting 504 U.S. at 504 n.2).

Other courts have similarly rejected claims brought by plaintiffs who failed to demonstrate the threat of imminent injury.  See Steger v. Franco, Inc., 228 F.3d 889, 892-93 (8th

Cir. 2000)(ADA plaintiffs must at least prove knowledge of architectural barriers said to be discriminatory and establish they would visit the building in the imminent future but for the these barriers); cf. Camarillo v. Carrols Corp., 518 F.3d 153, 158 (2d Cir. 2008) (finding injury-in-fact where plaintiff had sufficiently shown (1) past injury under ADA, (2) discriminatory treatment would continue, and (3) plaintiff intended to return given past patronage and proximity of restaurants to plaintiff's home).

### 3.   Test for Injury in Fact in ADA Context

When evaluating whether an ADA plaintiff suffers a sufficient injury for standing purposes, courts in this District apply a four-factor test focused on the likelihood of the plaintiff's return to the place of public accommodation.  See, e.g., Brown v. Showboat Atlantic City, No. 08-5145, 2010 WL 5237855, at *8 (D.N.J. Dec. 16, 2010); Access 4 All, Inc. v. Boardwalk Regency Corp., No. 08-3817, 2010 WL 4860565, at *3 (D.N.J. Nov. 23, 2010); Pistol Pete's, 2009 WL 3584597, at *4 (citing Cottrell v. Zagami, LLC, No. 08-3340, 2009 WL 1416044, at *3 n.3 (D.N.J. May 20, 2009 (collecting cases)).  Courts consider:  (1) the plaintiff's proximity to the defendant's place of public accommodation; (2) the plaintiff's past patronage; (3) the definiteness of the plaintiff's plan to return; and (4) the

plaintiff's frequency of nearby travel.[2]  An analysis of these factors allows the Court to appreciate the context of a plaintiff's standing allegations.  It sheds light on the question of whether the plaintiff is likely to return and thus whether the alleged discrimination has caused a sufficiently real and immediate injury to support standing for injunctive relief.  See id.

### i.  Plaintiff's Proximity to the Property

Defendants note that Mrs. Wittmann resides in Connecticut, "more than 280 miles from Atlantic, City," where the Hotel is located.  This distance between Mrs. Wittmann's residence and the Hotel, however, weighs neither for nor against standing.

Although a significant distance between a plaintiff and the place of public accommodation may diminish the likelihood that the plaintiff will return, where the place at issue is a travel destination or hotel, courts in this District have held that the plaintiff's proximity to a hotel is not probative of intent to

---

[2]  Jurisdictions outside New Jersey have adopted the same test to determine standing in Title III cases.  See, e.g., Brown v. Grand Island Mall Holdings, Ltd., No. 09-3086, 2010 WL 489531, at *3 (D. Neb. Feb. 8, 2010)(quoting Kramer v. Midamco, 656 F.Supp.2d 740, 747-51 (N.D. Ohio 2009)); Bodley v. Plaza Mgmt. Corp., 550 F.Supp.2d 1085, 1088 (D.Ariz. 2008)(internal citations omitted); Access 4 All, Inc. v. Wintergreen Commercial P'ship, Ltd., No. 05-1307, 2005 WL 2989307, at *3 (N.D. Tex. Nov. 7, 2005); Molski v. Kahn Winery, 405 F.Supp.2d 1160, 1163 (C.D.Cal. 2005); D'Lil v. Stardust Vacation Club, No. 00-1496, 2001 WL 1825832, at *3 (E.D.Cal. Dec. 21, 2001).

return.  <u>Access 4 All, Inc. v. Absecon Hospitality Corp.</u>, No. 04-6060, 2006 WL 3109966, at *6 (D.N.J. Oct. 30, 2006)("When the place of public accommodation is a hotel, as opposed to a restaurant, Plaintiff's proximity is less probative of intent to return."); <u>Access 4 All, Inc. v. 539 Absecon Blvd., LLC</u>, No. 05-5624, 2006 WL 1804578, at *3 (D.N.J. June 26, 2006) (noting that courts have found the "proximity" prong inapplicable where defendant's establishment is a hotel).  The rationale is that people generally stay in hotels when they are <u>not</u> in close proximity to their own homes.  Thus, whether a hotel is located near a plaintiff's home has little bearing on that plaintiff's likelihood of return.

### ii.  Past Patronage

A plaintiff's past patronage at an establishment supports a reasonable likelihood of future injury.  <u>Clark</u>, 255 F.Supp.2d at 343.  Courts acknowledge the inverse of this principle as well.  "Unless the plaintiff can demonstrate a specific connection to the establishment, lack of past patronage negates a possibility of future injury."  <u>Brown</u>, 2010 WL 5237855, at *10 (citing <u>Disabled Patriots of Am., Inc. v. City of Trenton</u>, Civ. No. 07-3165, 2008 WL 4416459, at *5 (D.N.J. Sept. 24, 2008); <u>see also</u> <u>Moliski</u>, 405 F.Supp.2d at 1164 (dismissing complaint <u>sua sponte</u>, despite plaintiff's professed intent to return, where plaintiff

visited defendant's winery only once and failed to show a connection to the winery, a preference for defendant's wines, or any ties to the winery area); <u>Bodley</u>, 550 F.Supp.2d at 1088 ("While a single visit does not preclude a finding of standing, the lack of a history of past patronage seems to negate the possibility of future injury at that particular location.") (internal citations and quotations omitted); <u>cf.</u> <u>Absecon Hospitality Corp.</u>, 2006 WL 3109966, at *7 (Florida resident who "loved" gambling established likelihood of return on summary judgment, where he traveled to Atlantic City "on many occasions"); <u>539 Absecon Blvd.</u>, 2006 WL 1804578, at *1 n.2 (Florida resident who visited defendant's hotel once but traveled to Atlantic City "several times a year," owned property and formerly conducted business there, enjoyed gambling and had friends there as well as family in Bricktown, New Jersey, alleged sufficient facts to show standing at pleadings stage). Connections to the defendant's establishment may include a particular interest in the defendant's services or ties to the area through family and friends.  <u>See</u> <u>id.</u>

　　　Here, the record demonstrates that Mrs. Wittmann's first trip to Atlantic City occurred on September 4, 2008, the day this dispute arose.  Def. SOF ¶ 22; Pl. Response SOF ¶ 22.  She claims no connection to the Hotel, and the record does not disclose any

other ties to Atlantic City.  In sum, Mrs. Wittmann's one-time,
attempted patronage of the Hotel and lack of professed connection
to the area do not support a finding that she is likely to return
and suffer future harm.

### iii. Definiteness of Plaintiff's Plans to Return

As discussed above, numerous courts have required plaintiffs
to satisfy the demands of <u>Lyons</u>, <u>Lujan</u>, and <u>Laidlaw</u> by presenting
evidence that they suffer an ongoing harm because they are
deterred from visiting the defendant's establishment or, put
another way, because they would return to the establishment in
the imminent future <u>but for</u> the discriminatory conduct.  <u>See
Steger</u>, 228 F.3d at 892 (requiring plaintiffs to show that "they
would visit the building in the imminent future but for the
[architectural] barriers," which constituted discrimination under
Title III); <u>Pickern v. Holiday Quality Foods, Inc.</u>, 293 F.3d
1133, 1137-38 (9th Cir. 2002)(finding "concrete, particularized
injury" where plaintiff stated he was "currently deterred from
attempting to gain access" to defendant's store); <u>Disabled in
Action v. Trump Intern. Hotel & Tower</u>, Civ. No. 01-5518, 2003 WL
1751785, at *7 (S.D.N.Y. 2003)("Courts considering ADA claims
have found that disabled plaintiffs ... have standing [at
pleadings stage] to bring claims for injunctive relief if they
show a plausible intention or desire to return to the place but

16

for the barriers to access.") (collecting cases); <u>Clark v.
McDonald's Corp.</u>, 213 F.R.D. 198, 229 (D.N.J. 2003) (requiring at
least one member of plaintiff organization to present evidence
that he or she is disabled, has notice of architectural barriers,
and would visit defendant's restaurant in the future but for the
barriers); <u>cf.</u> <u>539 Absecon Blvd., LLC</u>, 2006 WL 1804578, at *4
("[P]laintiff must have set forth a definitive intent to return
... in order to establish standing."). Thus, a plaintiff's mere
assertion that she hopes to return at some later date falls short
of establishing a "real and immediate threat" of future injury.
<u>See</u> <u>Pistol Pete's</u>, 2009 WL 3584597, at *5 (likening a general
allegation of a desire to return with the "some day" intentions
that the Supreme Court found unsatisfactory in <u>Lujan</u>, 504 U.S. at
563); <u>Dempsey v. Harrah's Atlantic City Operating Co., LLC</u>, Civ.
No. 08-5237, 2009 WL 250274, at *4 (D.N.J. 2009)(same); <u>Disabled
Patriots</u>, 2008 WL 4416459, at *6 (same).

Mrs. Wittmann, who did not address the standing argument
raised by Defendants, fails to disclose any future plans to
return to Atlantic City. The Court notes that Mr. Wittmann
"travels extensively with his job" and had a business interest in
Vineland, New Jersey, which prompted Mrs. Wittmann's travel to
Atlantic City. Pl. CSOF ¶¶ 3-4. Mrs. Wittmann has not, however,
indicated that her husband would have future business in the

Atlantic City area or, more importantly, that she would travel with her husband.  Thus, Plaintiff's lack of definitive plans to return to Atlantic City militates against a finding that she is likely to suffer future harm.

### iv. Frequency of Nearby Travel

Courts typically consider the frequency of a plaintiff's travel near the disputed establishment to determine the likelihood of future injury.  The rationale behind this prong is that if a plaintiff resides or works a great distance from a noncompliant establishment, he or she is less likely to have routine interaction with the establishment and is thus less likely to return.  As noted, Defendants argue that Mrs. Wittmann resides some 280 miles from the Hotel.

As an initial matter, the Court notes that this final factor apparently contemplates a local establishment that caters to a local clientele and provides less assistance in the context of a travel destination.  For example, the fact that a plaintiff rarely travels near a particular Shell gas station is probative of the fact that the plaintiff is unlikely to return to that particular gas station.  In contrast, the fact that a plaintiff does not frequently travel near a hotel has little probative value of that plaintiff's likelihood of returning to the hotel.

The Court thus construes this factor to consider Mrs. Wittmann's travel to Atlantic City.  As noted, her travel appears limited to the date on which this dispute arose. Such infrequent travel to Atlantic City suggests that Mrs. Wittmann is unlikely to return and suffer future injury.  Nor has Mrs. Wittmann demonstrated any particular connection to Atlantic City based on family ties, business dealings or recreational pursuits.

In sum, the totality of the above-listed factors indicates that Mrs. Wittmann has not demonstrated a real and immediate threat that she would again be subject to discrimination at the Hotel.  The Court finds Mrs. Wittmann's failure to disclose any plan to return to the Hotel most persuasive in this analysis. Because Mrs. Wittmann lacks standing to pursue a claim for prospective injunctive relief under Title III of the ADA, summary judgment on this claim must be awarded to Defendants.

**B.   Plaintiff's Remaining State Claim**

Given that Plaintiff lacks standing to pursue an ADA claim, and that this claim provided the basis for removal to federal court, a question remains as to the Court's jurisdiction to address Plaintiff's LAD claim.  Of course, "[t]he fact that the federal claim[] that w[as] the basis for the removal w[as] unsuccessful or w[as] dropped during subsequent proceedings does

19

not deprive the district court of jurisdiction, unless the federal claims w[as] 'insubstantial on [its] face.'" Felice v. Sever, 985 F.2d 1221, 1225 (3d Cir. 1993) (quoting Hagans v. Lavine, 415 U.S. 528, 542 n.10 (1974)). However, "where the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." Hedges v. Musco, 204 F.3d 109, 123 (3d Cir. 2000)(quoting Borough of West Mifflin v. Lancaster, 45 F.3d 780, 788 (3d Cir. 1995)) (emphasis in original). See also Carnegie-Mellon University v. Cohill, 484 U.S. 343, 350 (1988) ("When the balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice.").

It is not clear from the pleadings that, absent Plaintiff's federal claim, the Court has an independent basis for jurisdiction over Plaintiff's LAD claim. Nor is it clear that considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for retaining

jurisdiction over the LAD claim.  Therefore, the parties shall address this issue by written submission to be filed within fourteen days from the date of this Opinion and Order.

**V.   CONCLUSION**

For the aforementioned reasons, Defendants' Motion for Summary Judgment is granted in part and denied in part.  An appropriate Order will issue this date.


Dated: <u>February 18, 2011</u>      <u>s/Renée Marie Bumb</u>
                                      RENÉE MARIE BUMB
                                      UNITED STATES DISTRICT JUDGE